THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* KENNETH CASERTA, Defendant-Appellee.

Second District No. 82—959

Opinion filed April 24, 1984.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

Victor F. Ciardelli, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State has filed a certificate of impairment and appeals pursuant to Supreme Court Rule 604(a) (87 Ill. 2d R. 604(a)) from an interlocutory order which granted defendant's motion to suppress evidence, *i.e.*, a revolver found in an automobile driven by defendant, Kenneth Caserta.

The issue raised on appeal is whether the trial court erred in suppressing this evidence where the evidence was in plain view and the police officer's conduct was not unreasonable.

Defendant was arrested on July 10, 1982, and charged with unlawful use of weapons (Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(4)). He filed a motion to suppress evidence (Ill. Rev. Stat. 1981, ch. 38, par. 114—12), and at a hearing on that motion testified that on the evening of his arrest, he had gone to the Flame restaurant in Oakbrook Terrace driving a gray 1977 Lincoln Mark V. Defendant's car had been parked for him in the restaurant lot by an attendant, and returned to him by an attendant at the time of his departure at about 3:30 a.m. Upon leaving the restaurant, defendant drove approximately four blocks when he was stopped by several police officers. He was alone at the time and to the best of his knowledge was not committing any type of offense. When defendant pulled over, he heard the police demand that he get out of the car with his hands up. He then saw that the occupants of four squad cars, with their shotguns and pistols drawn, were on the scene. Defendant was spread-eagled over the trunk of his car and searched while a police sergeant opened his car door and entered. Defendant did not give permission for a search of his vehicle. The sergeant reached in, grabbed the gun, and threw it onto the roof of defendant's car.

Sergeant Stephen J. Quinn of the Oakbrook Terrace police depart-

ment testified that earlier on the evening in question the police had received a complaint that there had been "a traffic altercation" in which two vehicles had cut off a third vehicle. This incident involved two Lincolns and a Corvette. In the course of his investigation, Quinn was informed that one of the Lincolns was blue, and the other was silver with Pennsylvania license plates. He was further told that the driver of the blue Lincoln had threatened the Corvette's driver with a gun, saying, "I'm going to blow your head off." The driver of the silver Lincoln responded, "Let's go, it's not worth it," and the two Lincolns were driven northbound on Summit.

The police began checking local bars and found a blue Lincoln in the parking lot at the Flame restaurant. On receiving this report, Sergeant Quinn transported the driver of the Corvette to the Flame parking lot where the latter identified the blue Lincoln. He and other officers looked into this vehicle for the gun, and then glanced into the adjoining car in the parking lot, which was a silver Lincoln with Pennsylvania license plates. In the silver Lincoln he observed the butt of a gun in a holster protruding up between the two sections of the front seat. This observation was made from outside the car. They never went into the vehicle. The police then set up the surveillance on both vehicles. When defendant later drove away in the silver Lincoln, Sergeant Quinn and another officer followed and stopped him, ordered him out of the car, and had him put his hands on the trunk. Upon ascertaining that the weapon was not on the defendant's person, Quinn went into the vehicle and retrieved the gun from between the seats.

On cross-examination, Quinn testified that he had also arrested the driver of the blue Lincoln and that as a result of that arrest he had prepared a three-page report. In that report, Quinn related that the complainant had reported being threatened by a man who then drove away and that the complainant described the other man's car and license plate. The report continued that the offender's car was located about five minutes later at the Flame restaurant. The three-page report made no mention of a silver Lincoln or of another driver's participation in the traffic incident. In addition, Sergeant Quinn's two-page report, which related to the arrest of the instant defendant, made no mention of the traffic incident. Quinn did not recall whether a police report was prepared regarding the original "man-with-a-gun" complaint.

Sergeant Quinn further testified that most of the patrons at the Flame have their cars parked in the lot for them by attendants, although some park their cars themselves. When he stopped the car at

the time of the arrest, the armrest between the seats was down, although it had been up when he had looked into the car in the parking lot. He had not tried the car's door in the parking lot. When they had looked into the window of the car while it was in the parking lot, the police used their flashlights.

Defendant testified in rebuttal that when he brought his car into the parking lot, both armrests were down. The center armrest completely covers the center opening between the two seats and about three or four inches on either side.

In granting the motion to suppress, the trial court stated that the information supplied by the complaining motorist "certainly was insufficient as far as a basis for a search to be made. It is lacking in probability." In further remarks, the court indicated that it regarded as not controlling the question of whether the police could see the gun from their position in the parking lot. Rather, in view of the complainant's inability to trace the car to its position in the parking lot, there was insufficient probable cause to "come upon" the vehicle and to look into this particular vehicle. The court also appeared to find less justification for the police to look into a car parked in a private parking lot than into a car parked on the street. As the court remarked, "It is not a parking lot, it is a restaurant parking lot. *** I think when a person pays a bill in a restaurant and there is a parking lot afforded, you can probably say that part of that bill goes toward the parking lot, too."

The State's position is that the police were properly in the parking lot pursuant to an investigation of a report of a man with a gun. Once in the parking lot, the State contends, the police "inadvertently" saw evidence of a crime in defendant's car and were justified in later seizing the weapon. Defendant's appellate argument is that credibility determinations were made by the trial court which were not manifestly erroneous. In this regard, defendant claims that the failure of Officer Quinn to mention in his police report that defendant's vehicle was involved in the original "traffic altercation" and the failure of that report to list the name of the complainant undermined Officer Quinn's testimony, which explained the reason for his presence in the parking lot, such that the trial court made a credibility determination, rejecting the explanation of the police and finding they had no probable cause to be in the parking lot. Also, defendant argues that his testimony regarding the downward position of the armrests which would allegedly cover the weapon was believed by the trial court.

Contrary to the defendant's contention, the trial court did not appear to base its decision to suppress the evidence on a credibility as-

sessment, but rather it determined as a legal matter that the police lacked probable cause to be in the parking lot and to look into defendant's vehicle. This particular question before us is a legal one subject to consideration by this court *de novo*. (See *People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543.) Even if this were a credibility question decided adversely to the State below, under the circumstances here our result would still be the same.

The analysis of whether the eventual seizure of the revolver violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV) under the circumstances depends first upon whether the police were lawfully in a position to observe the weapon, and then, if so, whether the weapon was within "plain view." The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior fourth amendment justification and who has probable cause to suspect that the item is connected with criminal activity. (*Illinois v. Andreas* (1983), 463 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3324; *People v. David* (1981), 96 Ill. App. 3d 419, 421, 421 N.E.2d 312; *People v. De La Fuente* (1981), 92 Ill. App. 3d 525, 529, 414 N.E.2d 1355; see 1 W. LaFave, Search & Seizure sec. 2.5(c), at 355-56 (1978).) Initially, we must determine whether the police were in a place where they had a lawful right to be, *i.e.*, in the parking lot of the Flame restaurant, when they observed the revolver inside defendant's vehicle parked in that lot.

Numerous decisions in other jurisdictions have concluded that a police officer, just as any citizen, has a right to be in a parking lot adjacent to a commercial establishment which is open to the public. (See *United States v. Finch* (4th Cir. 1982), 679 F.2d 1083, 1085; *State v. Planz* (N.D. 1981), 304 N.W.2d 74; *Albo v. State* (Fla. 1980), 379 So. 2d 648, 650; *Milner v. State* (1981), 159 Ga. App. 887, 285 S.E.2d 602; see also *United States v. Bellina* (4th Cir. 1981), 665 F.2d 1335; *Commonwealth v. Cadoret* (1983), 388 Mass. 148, ____, 445 N.E.2d 1050, 1052-53.) The rationale is that a law enforcement officer is a member of the public and, just like any citizen, may accept a general public invitation to enter upon commercial premises which are open to the public. Courts have consistently held that police, albeit motivated by an investigative purpose, conducted no search by merely entering premises open to the public. See 1 W. LaFave, Search & Seizure sec. 2.4(b), at 338-39 (1978).

We believe this reasoning is applicable in the case at bar. The Flame restaurant catered to the general public and was open to the public at the time the police entered upon the lot. Automobiles were

either self-parked or parked by an attendant in the restaurant parking lot. We conclude that the police had a lawful right to be in the parking lot.

In *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, a plurality of the United States Supreme Court determined that the "plain view" doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied: (1) the police officer must lawfully make an "initial intrusion" or otherwise be in a position from which he can view a particular area; (2) the officer must discover evidence inadvertently, that is he may not know in advance the location of the evidence and intend to seize it relying on the plain view doctrine only as a pretext; and (3) it must be immediately apparent to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. 403 U.S. 443, 464-71, 29 L. Ed. 2d 564, 582-86, 91 S. Ct. 2022, 2037-41.

In a recent opinion, *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535, a plurality of the Supreme Court further discussed the plain-view doctrine and stated that plain view "provides grounds for seizure of an item where an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." (460 U.S. 730, 738, 75 L. Ed. 2d 502, 511, 103 S. Ct. 1535, 1540-41.) After determining first that the initial stop of the defendant was valid, the court went on to hold that the use of a flashlight to illuminate the interior of the defendant's car did not infringe upon any fourth amendment right (460 U.S. 730, 739, 75 L. Ed. 2d 502, 512, 103 S. Ct. 1535, 1541), and that there was no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. (460 U.S. 730, 739, 75 L. Ed. 2d 502, 513, 103 S. Ct. 1535, 1542.) As we determined above, the police in the case at bar were in a place they had a right to be and, as in *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535, the fact that they used a flashlight in attempting to observe the interior of defendant's vehicle infringed on no protected right of the defendant. See also *People v. Bombacino* (1972), 51 Ill. 2d 17, 22, 280 N.E.2d 697.

We next must determine the applicability of the other two requirements of the plain-view doctrine to the facts of this case. In *Texas v.*

*Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535, the Supreme Court modified the requirement in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, that it be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. The court restated the rule to be that the seizure of property in plain view is presumptively reasonable assuming that there is "probable cause" to associate the property with criminal activity. (460 U.S. 730, 741, 75 L. Ed. 2d 502, 513-14, 103 S. Ct. 1535, 1542.) There appears to have been no dispute below that the possession of the weapon in the car gave the police probable cause that a criminal offense was being committed, and the weapon was subject to seizure. See Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(4).

As to the third requirement in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, that the police discovery of the incriminating evidence be "inadvertent," the trial court did not consider this issue although there is no direct contrary evidence to the testimony of Officer Quinn that the police here were looking for a possible weapon in a blue Lincoln, not the defendant's vehicle, and when glancing in defendant's automobile parked next to the blue Lincoln, they observed the weapon inside. Thus, there was no bar to the eventual seizure based upon this "inadvertence" requirement of plain view. We further note that in *Texas v. Brown* (1983), 460 U.S. 730, 743, 75 L. Ed. 2d 502, 514-15, 103 S. Ct. 1535, 1543-44, the plurality, and the concurring opinion of Justice White, call into question the "inadvertent" viewing requirement enunciated in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

Remaining, however, is a factual issue disputed below as to whether Officer Quinn could see the weapon from outside the defendant's vehicle while it was parked in the lot. He said he could. The defendant testified that the armrests were down, and that in that position they completely cover the center opening between the two seats where Quinn contends he saw the weapon. Quinn testified that the armrest was up. Unfortunately, contrary to defendant's appellate argument, the trial court specifically declined to make this credibility determination and, instead, suppressed the evidence, as we have determined herein, incorrectly on another basis. While we conclude the order granting the defendant's motion to suppress on the legal basis stated by the trial court was manifestly erroneous and must be reversed (see *People v. Winters* (1983), 97 Ill. 2d 151, 163, 454 N.E.2d 299), the cause is remanded with directions to the trial court for con-

sideration of the factual question not ruled upon as to whether the weapon could be seen from outside defendant's automobile. (*People v. Tate* (1967), 38 Ill. 2d 184, 188, 230 N.E.2d 697; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 621-22, 378 N.E.2d 1318.) Whether new evidence must be taken on that issue is left to the discretion of the trial court. If the court's determination is that the weapon could be seen from outside the vehicle, the motion to suppress must be denied. If otherwise, the motion must be granted.

For the foregoing reasons, the judgment below is reversed and the cause is remanded for further consideration as directed.

Reversed and remanded with directions.

UNVERZAGT and NASH, JJ., concur.