NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOSE R. JIMENEZ, *Appellant*.

No. 1 CA-CR 22-0499
FILED 10-3-2023

Appeal from the Superior Court in Maricopa County
No. CR2020-101481-002
The Honorable Geoffrey Fish, Judge
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Cynthia J. Bailey joined.

---

**F U R U Y A**, Judge:

¶1 Jose Jimenez appeals his convictions and sentences for drug, money laundering, resisting arrest, and weapons offenses, arguing the superior court should have suppressed evidence seized pursuant to a warrant affidavit containing material omissions. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Because denial of Jimenez's suppression motion is the sole basis of appeal, we recite the facts based on the evidence presented on that motion and we view such evidence in the light most favorable to sustaining the superior court's ruling. *State v. Goudeau*, 239 Ariz. 421, 439 ¶ 26 (2016). The parties stipulated to the relevant facts, and the court ruled based on their pleadings and oral argument.

¶3 While surveilling Jimenez's south Phoenix residence for suspected drug crimes, police officers saw a car with Oregon license plates arrive at the house. The driver, later identified as E.Z., removed small items from the rear passenger door panel, placed them in a large bag, and entered the house. He returned to the car, retrieved a smaller bag, and went back into the house. Several hours later, the driver exited the house with a large duffle bag that he placed in the back seat of his car. After he drove away, police pulled him over for an observed traffic violation. E.Z. consented to a search of the vehicle, and police found in the duffle bag about $25,000 in cash and 20 pink pills, which were believed to be Adderall. On a ledger next to the pills was written, "Adderall 150 out of 1,000 — 300 trip."

¶4 After receiving a *Miranda* advisement, *Miranda v. Arizona*, 384 U.S. 436 (1966), E.Z. said the Adderall in the duffle bag was his, he did not have a prescription for it, he had bought it for $10 per pill from someone other than the occupants of the south Phoenix house, and he used it to stay awake while driving. E.Z. also told police that people at the house would load the door panels of his vehicle with items wrapped in black plastic and pay him $1,000 per trip to Oregon. He had made about six such trips. E.Z.

denied knowing about the cash in the duffle bag and said he had been told to "hold" onto the bag until the next day.

¶5        After E.Z.'s interview, an officer applied for a warrant to search the south Phoenix residence for evidence of possession of dangerous drugs for sale, money laundering, and conspiracy. The officer's affidavit stated that police had been surveilling the residence for illegal drug sales, Jimenez was its "main occupant," and he had three prior convictions for drug and money laundering crimes. The affidavit also stated that drug trafficking organizations commonly use "runners" to move illegal drugs and money from state to state. It further described Adderall as a "dangerous drug" and included details of the officers' observations, search, and conversation with E.Z. described above—except it did not include E.Z.'s statements that the Adderall belonged to him, that he bought it from someone unassociated with the south Phoenix residence, or that he used it to stay awake while driving.

¶6        A superior court commissioner issued a warrant authorizing police to search the south Phoenix residence for items including "[a]ny amount of Adderall, or any other illegal drug," paraphernalia used for "Adderall, and/or any other illegal drugs," "U.S. currency that may be the proceeds of illicit drug transactions," and deadly weapons. In executing the warrant, police found about 1,000 fentanyl tablets, two firearms, more than $200,000 in U.S. currency, a money counter, scales, vacuum sealers, and plastic packaging materials. No Adderall was found.

¶7        The State charged Jimenez with possession of narcotic drugs for sale, money laundering in the second degree, possession of drug paraphernalia, two counts of misconduct involving weapons, and resisting arrest. Jimenez moved to suppress all evidence stemming from execution of the search warrant on the ground that the affidavit omitted facts critical to the commissioner's decision to issue the warrant. Specifically, he contended that by omitting E.Z.'s statements about his acquisition and ownership of the Adderall, the officer affiant falsely implied a link between the Adderall and the residence to be searched. E.Z. argued that without that implication, the affidavit did not show probable cause that illegal drugs would be found in Jimenez's house.

¶8        The superior court denied the motion. The court found the officer did not intentionally omit E.Z.'s statements about the Adderall, the omission was not misleading even if recklessly made, and the affidavit would have established probable cause had it included the omitted facts.

¶9 A jury found Jimenez guilty as charged except for one misconduct involving weapons count—which the superior court had severed before trial and dismissed after it. The court sentenced Jimenez to concurrent prison terms totaling five years. We have jurisdiction over his timely appeal under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

¶10 The Fourth Amendment requires search warrants to be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. Const. amends. IV, XIV. A defendant may move to suppress evidence obtained by search warrant if the supporting affidavit misstates or omits material facts necessary to the determination of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *State v. Carter*, 145 Ariz. 101, 108 (1985); *see also* Ariz. R. Crim. P. 16.2. Such a motion is commonly referred to as a *Franks* motion or challenge.

¶11 A defendant is entitled to a hearing on a *Franks* motion if he or she "makes a substantial preliminary showing (1) that the affiant knowingly, intentionally, or with reckless disregard for the truth included a false statement in the supporting affidavit, and (2) the false statement was necessary to the finding of probable cause." *Frimmel v. Sanders*, 236 Ariz. 232, 239 ¶ 27 (App. 2014). "A *Franks* challenge is also authorized when it has been shown 'a warrant affidavit valid on its face . . . contains deliberate or reckless omissions of facts that tend to mislead.'" *Id.* (quoting *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)). "An affiant is not permitted to tell 'less than the total story' to 'manipulate the inferences a magistrate will draw,' or 'intentionally or recklessly omit[ ] facts required to prevent technically true statements in the affidavit from being misleading.'" *Id.* (quoting *Stanert*, 762 F.2d at 781); *see also State v. Buccini*, 167 Ariz. 550, 557–58 (1991) (describing an omission as "material" where "it rendered the affidavit 'substantially misleading' and was also necessary to the finding of probable cause") (quoting *People v. Aston*, 703 P.2d 111, 120 (Cal. 1985)).

¶12 If the defendant establishes that a false statement or material omission was deliberately or recklessly made, "the court must redraft the affidavit by deleting the falsehoods and adding the omitted material facts" and then proceed to determine whether the redrafted affidavit shows probable cause. *Id.* at 554. Jimenez argues on appeal that the officer's conspicuous omission from the warrant affidavit of E.Z.'s statements about the Adderall was deliberate, that the omission tended to mislead the

commissioner who reviewed the affidavit, and that an affidavit redrafted to include the omitted statements would not establish probable cause that evidence of illegal drug activity would be found in the residence.

¶13            We will sustain the superior court's factual determination on whether an affiant made an intentional, knowing, or reckless misstatement or omission unless clearly erroneous. *Id.* at 558. "Merely innocent or negligent mistakes in an affidavit will not satisfy the first prong of the *Franks* test." *Carter*, 145 Ariz. at 109. But we consider de novo whether a redrafted affidavit establishes probable cause for issuing a search warrant. *Buccini*, 167 Ariz. at 558.

¶14            We need not evaluate the superior court's determination of *Franks*' intent prong if it is "plain" that the defendant has not met the probable cause prong. *See Carter*, 145 Ariz. at 109. That approach is appropriate here. An affidavit redrafted to include E.Z.'s omitted statements about the Adderall would present the following: (1) Jimenez was the primary occupant of the house to be searched and had three prior convictions for drug and money laundering offenses; (2) officers had been surveilling the house for illegal drug sales; (3) E.Z. was seen removing small items from a car door panel, loading the items into a large bag, and bringing the items into the house; (4) E.Z. was also seen bringing a smaller bag into the house; (5) E.Z. later returned to his car with a bag that contained about $25,000 cash, 20 Adderall pills, and a ledger that read, "Adderall 150 out of 1000 — 300 trip"; (6) E.Z. said the occupants of the house loaded the door panels of his car with items wrapped in black plastic and paid him $1,000 per trip to Oregon; (7) E.Z. had made about six such trips; (8) it is common for drug trafficking organizations to use "runners" to transport illegal drugs and currency across state lines; (9) E.Z. said the Adderall was his, he did not have a prescription for it but bought it for $10 per pill from someone other than the occupants of the house, and he used it to stay awake while driving; and (10) E.Z. said he did not know there was cash in the duffle bag and had been told to "hold" onto the bag until the next day.

¶15            "An officer has probable cause to conduct a search if a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with criminal activity and that they would be found at the place to be searched." *Id.* at 110; *see also Buccini*, 167 Ariz. at 556 ("[P]robable cause exists if 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). An affidavit redrafted to include E.Z.'s omitted statements about the Adderall would still provide

probable cause that evidence of drug-related crimes including "Adderall, or any other illegal drug" would be found in Jimenez's residence.

**¶16**     Even if the Adderall were unconnected to Jimenez or his home, that fact does not dispel a reasonable inference that E.Z. was transporting illegal drugs and cash between the residence and Oregon. That some of E.Z.'s conduct, viewed in isolation, may have been innocent—or at least unconnected to Jimenez—does not alter or rehabilitate other signs of criminality, including Jimenez's criminal history. *See State v. Woods*, 236 Ariz. 527 ¶ 12 (App. 2015) (noting that a suspect's criminal history is part of the totality of circumstances that may provide context for seemingly innocent behavior); *United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009) ("Although a defendant's criminal history is not dispositive, it is relevant to the probable cause inquiry."); *cf. United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause."). Further, a reasonably prudent person could view E.Z.'s statements dissociating the Adderall from Jimenez and his residence with suspicion. E.Z.'s account of buying the Adderall for personal use from someone other than Jimenez did not explain the ledger information or how E.Z. could not have known about the $25,000 cash in the same bag as his Adderall. *See District of Columbia v. Wesby*, 583 U.S. 48, 59–60 (2018) (finding probable cause to arrest occupants of a home where totality of circumstances, including "implausible responses" to officers' questions, "suggested criminal activity").

## CONCLUSION

**¶17**     For these reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA

6