**UNITED STATES of America, Appellee,**

v.

**Owalabi FAWOLE, Appellant.**

**No. 85–5025.**

United States Court of Appeals,
Fourth Circuit.

Submitted Jan. 15, 1986.

Decided Feb. 26, 1986.

Robert G. Fierer, Fierer & Westby, Atlanta, Ga., for appellant.

Elsie L. Munsell, U.S. Atty., Alexandria, Va., Lawrence J. Leiser, Asst. U.S. Atty., and Lester M. Joseph, Sp. Asst. U.S. Atty., Chicago, Ill., for appellee.

Before ERVIN and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Owolabi O. Fawole appeals his conviction for entering the United States with a false passport in November of 1982, in violation of 18 U.S.C. section 1546, and for submitting false currency reports on 16 occasions between 1981 and 1983, in violation of 31 U.S.C. sections 5314, 5316, and 5322(b). Fawole contends that the district court erred in denying his motions to suppress evidence seized during a search of his home. Finding no error, we affirm the judgment of the district court.

On January 6, 1984, a judge of the Superior Court of Fulton County, Georgia, issued a warrant to agent S.L. Simmons of the Georgia bureau of investigation, authorizing him to search Fawole's residence in

College Park, Georgia. Agent Simmons had submitted a 13-page affidavit outlining his 3-month investigation of an insurance fraud allegedly perpetrated by Fawole in 1981. As Simmons recounted in his affidavit, he had begun the investigation in November of 1983 upon learning that a 1983 Rolls Royce and a 1983 Mercedes were being shipped from Belgium to a Nigerian national named Owolabi Fawole and to his wife, Janet Howard Fawole. Upon receiving this information, Simmons initially thought that Fawole could be involved in credit card fraud, because he had heard that a leader of a fraud ring in the Southeast was a Nigerian living in Atlanta who drove a Rolls Royce. Although this hunch later proved incorrect, it prodded Simmons's investigation of Fawole.

Simmons learned from the Georgia department of revenue that Fawole and his wife already owned a 1982 Rolls Royce and a 1982 Mercedes, neither with outstanding liens. Simmons then contacted the insurance company listed with the department of revenue as the insurer for the automobiles, to find out Fawole's employment background and to determine whether Fawole had legitimate income sufficient to pay for the cars. When Simmons's contact within the insurance company reported that Fawole had no automobile insurance, Simmons contacted another insurance company and learned that Fawole had a homeowner's policy on which he had filed a $21,500 burglary claim in 1981. The claims adjuster who had handled Fawole's claim was already being investigated by the Georgia bureau of investigation for participation in insurance fraud. Upon further investigation, Simmons decided that the information submitted by Fawole during the settlement of his claim and the handling of the claim by the adjuster fit the pattern of fraudulent claims that the bureau had previously discovered. Simmons also reported in the affidavit that he had been told by an official at the Immigration and Naturalization Service that Fawole was subject to an outstanding warrant for his deportation.

Agent Simmons applied for a warrant to search Fawole's home for three types of evidence of the insurance fraud. First, Simmons sought certain appliances and other items that Fawole had reported stolen. Simmons also sought receipts and warranty books that Fawole had reportedly shown to the claims adjuster to verify that he had indeed owned the items claimed to be stolen. Finally, Simmons sought business records relating to a corporation of which Fawole was president. Simmons believed that Fawole had falsely reported his income from this corporation to the insurance company upon applying for the insurance policy and upon filing the burglary claim. Because Simmons had been unable to find a business address for the corporation, he believed that the records could be found at Fawole's home. Satisfied that the affidavit showed probable cause, the judge issued the warrant to agent Simmons.

Simmons executed the warrant in the evening of January 6, 1984, with the aid of ten other law enforcement agents: three from the Atlanta police, three from the Georgia bureau of investigation, three from the United States Customs Service, and one from the United States Immigration and Naturalization Service. Before conducting the search, Simmons briefed all the participating agents at the U.S. Customs Service office in Atlanta, showing them both the affidavit and the warrant and explaining the purposes of the search. Upon reaching Fawole's residence, Simmons divided the searchers into two-member teams, each responsible for designated rooms. During the three-and-a-half-hour search, agent Simmons seized approximately 350 documents, appliances, and other items. Over 150 of these documents and small items were found within a briefcase that Simmons seized. Among the documents seized were two Nigerian passports, each bearing Fawole's photograph. One bore the name Owolabi O. Fawole; the other bore the name Babatunde T. Alabi. The Alabi passport was found in the briefcase; the Fawole passport in a dresser drawer.

Agent Simmons later delivered the Alabi passport to federal officials. On August

14, 1984, Fawole was indicted for entering the United States with a false passport and for filing currency reports under a false name on 16 occasions within a 12-month period. Prior to trial, the district court held two hearings on Fawole's motion to suppress the evidence of the Alabi passport. The court denied the motion. Fawole then entered into a conditional stipulation of facts, reserving his right to appeal the denial of his motion to suppress. He was convicted on both counts.

Fawole presents several grounds for reversing the court's denial of his motion to suppress. Fawole argues first that the warrant on its face and the search as executed constituted a general warrant and a general search, prohibited by the fourth amendment. Second, he argues that the warrant was not supported by probable cause. Finally, he contends that the warrantless seizure of the passport was improper because its discovery was not inadvertent.

### I

■ The fourth amendment prohibits general warrants and general searches. *See, e.g., Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). The warrant at issue here authorized the seizure of "address books, diaries, business records, documents, receipts, warranty books, guns, stereo equipment, [and] color television which are, evidence of Violation of Georgia State Statute 16-8-2 Theft by Taking." The warrant confines the executing officers' discretion by allowing them to seize only evidence of a particular crime. Consequently, we find that the warrant describes the items to be seized with sufficient particularity to satisfy the fourth amendment. *See United States v. Ladd,* 704 F.2d 134, 136 (4th Cir.1983).

■ Fawole contends, however, that even if the warrant was not a general one, the search as executed constituted a general search because many insignificant, irrelevant items were seized.

The seized items that Fawole points to as demonstrating the general character of the search were found in the same briefcase in which the Alabi passport was found. Rather than recording at the site the more than 150 separate items found within the briefcase, agent Simmons seized the briefcase with its contents in order to make an inventory at his office. The irrelevant items were later returned to Fawole. We agree with the district court that the search of the briefcase was within the scope of the warrant, because "address books, diaries, business records, documents, receipts, [and] warranty books" are often found in briefcases. Moreover, Simmons reasonably desired a detailed inventory of the entire contents of the briefcase upon realizing that the passport found within it was evidence of a crime. Thus, although agent Simmons exceeded the scope of the warrant by seizing the irrelevant items instead of making an on-site inventory, we conclude that the seizure and return of items within a single briefcase containing evidence of a crime does not amount to the sort of "general, exploratory rummaging in a person's belongings" proscribed by the fourth amendment. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

### II

The Supreme Court established in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that if a defendant shows by a preponderance of the evidence that the affidavit used to procure a search warrant contained a false statement made "knowingly and intentionally, or with reckless disregard for the truth," and if the affidavit does not establish probable cause when considered without the false statement, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 155, 156, 98 S.Ct. at 2676.

■ In this case the affidavit contained two pieces of information that Simmons

later found to be false: the information that Fawole's car was not insured and that Fawole was subject to an outstanding deportation warrant.[1] Fawole contends that the district court erred in finding that agent Simmons had not made these statements knowingly or with reckless disregard for the truth. Simmons testified at the suppression hearing that a confidential informant within the insurance company had told him that Fawole had no policies with that company. Simmons learned that this information was incorrect when he found Fawole's policies during the search of his home. The immigration official who had told Simmons about the deportation order also testified at the suppression hearing, explaining that he had not known that Fawole had secured a stay of the deportation order. Upon hearing this testimony, the district court concluded that agent Simmons had not deliberately falsified the affidavit. Nor had Simmons reported the information with a reckless disregard for truth, the court found, because Simmons had no reason to doubt the information given him.

The findings of the district court are not clearly erroneous. Because Fawole has not established knowledge or recklessness on the part of agent Simmons, the inaccuracies in the affidavit do not affect the warrant's validity. We note further that neither the supposed lack of automobile insurance nor the deportation warrant had any bearing on probable cause to believe that Fawole had committed insurance fraud.

### III

Finally, Fawole contends that the Alabi passport should have been suppressed because its seizure was outside the scope of the warrant and did not satisfy the requirements of the plain view doctrine.

The warrantless seizure of private possessions is permissible under the "plain view" doctrine if the seizure meets three conditions. *Texas v. Brown*, 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) (plurality); *United States v. Dart*, 747 F.2d 263, 269 (4th Cir.1984). First, the police officer "must be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording him a 'plain view.'" 460 U.S. at 737 n. 3, 103 S.Ct. at 1540 n. 3. Second, the police officer must discover the incriminating evidence "inadvertently." 460 U.S. at 737, 103 S.Ct. at 1540, *quoting Coolidge v. New Hampshire*, 403 U.S. 443, 470, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971). Third, it must be "immediately apparent" to the officer that the item may be contraband or evidence of a crime. 460 U.S. at 737, 103 S.Ct. at 1540, *quoting Coolidge*, 403 U.S. at 466, 91 S.Ct at 2038.

■ We conclude that all three elements are satisfied in this case. First, the police officers were legitimately in a position to discover the passport. The search was authorized by a valid warrant. Although the warrant did not authorize federal agents to search Fawole's home, their participation in the search does not require suppression of the passport because the warrant was obtained and the search was executed in good faith by the state officer. The passport was discovered in a briefcase that the officers reasonably opened and searched in their effort to find books, papers, and other records of the corporation from which Fawole reportedly derived his income. *See United States v. Crouch*, 648 F.2d 932, 933 (4th Cir.1981).

Moreover, it was "immediately apparent" to the officers that at least one of the two passports constituted evidence of a crime, because they could immediately perceive that the same photograph accompanied two different names.

Fawole argues that the seizure of the passport does not satisfy the second re-

---

1. Fawole also contends that a third piece of information was false: the implication that Fawole was involved in credit card fraud. The affidavit did not state that Fawole was involved in credit card fraud, however. The affidavit merely recorded that Simmons's hunch provoked his investigation of Fawole. Thus, Simmons's reporting this initial belief does not constitute a "false statement" within the meaning of *Franks*.

quirement of *Texas v. Brown:* that the discovery be inadvertent. The plurality in *Texas v. Brown* defined an inadvertent discovery as one in which police officers do not " 'know in advance the location of [certain] evidence and intend to seize it,' relying on the plain-view doctrine only as a pretext." 460 U.S. at 737, 103 S.Ct at 1540, *quoting Coolidge,* 403 U.S. at 470, 91 S.Ct. at 2040. Fawole contends that the state officers conducting the search knew of the existence of the passport and intended to seize it, using the warrant and the plain view doctrine as subterfuge. Fawole offers no direct evidence of the officers' knowledge and intent. Rather, he asks the court to infer the requisite knowledge and intent from three circumstances.

First, he argues that agent Simmons included false information in the affidavit to be sure that he secured a warrant enabling him to search for the passport. As we have seen, the district court found that Simmons did not intentionally or recklessly include false information. Consequently, the inaccuracies in the affidavit do not permit the inference that the affidavit was designed to procure the authority to seize a passport under the plain view doctrine.

Second, Fawole asserts that the date of the alleged crime under investigation shows that Simmons's real motive was not to secure evidence of this crime. To the contrary, the date of the alleged insurance fraud has no bearing on the question of whether the fraud was the real focus of the search. The statute of limitations had more than a year to run at the date of the search.[2] Moreover, as the district court noted, the date of an alleged crime does not affect probable cause so long as the evidence is not stale. *See United States v. McCall,* 740 F.2d 1331, 1335–36 (4th Cir. 1984). In this case agent Simmons began his investigation of Fawole in November of 1983 and was still collecting evidence of a possible fraud on the day that he applied for the warrant, January 6, 1984. The

appliances sought were of a type not likely to be readily moved from place to place, and Simmons had found no other likely location for the corporate records. The warranties and receipts were likely to be at Fawole's home because Simmons had not found them in the insurance company's claim file, nor had he found a business address at which Fawole might keep such papers. *See United States v. Freeman,* 685 F.2d 942, 952 (5th Cir.1982) (evidence supporting search warrant was not stale, where items sought are normally kept at one's residence for a long period of time). Thus, there was no staleness with regard to probable cause to believe either that the crime had occurred or that the evidence could be found at Fawole's house. Consequently, the date of the crime does not imply that Simmons's intent in seeking the warrant was other than to secure evidence of the alleged insurance fraud.

Finally, Fawole argues that the participation of federal officers shows that the real purpose of the search was to secure known evidence of federal crimes.

The participation of federal officers in the search does not show that they or agent Simmons knew that a false passport could be found at Fawole's home and that they intended to seize it. Agent Simmons testified that the immigration officer who participated in the search had never mentioned the possibility that Fawole had brought money into the country under an assumed name. The evidence does not show that Simmons or the federal agents knew of the passport and intended to seize it. At most, the evidence shows that Simmons and the federal agents suspected customs and immigration violations. Such suspicions do not constitute knowledge or probable cause to believe that a false passport could be found at Fawole's home. "Mere expectation or suspicion that discovery would occur does not preclude application of the plain view doctrine." *United States v. Liberti,* 616 F.2d 34, 37 (2d Cir. 1980); *see United States v. Hare,* 589 F.2d 1291, 1295 (6th Cir.1979).

---

**2.** Under Georgia law, a theft by taking of more than $500 is a felony. Ga.Code Ann. § 16–8–12 (1982); *see also* former Ga.Code Ann. § 26–

1812. The statute of limitations for such a felony is four years. Ga.Code Ann. § 17–3–1(c) (1982).

Fawole mistakenly relies on *United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978), for the proposition that the seizure of items outside the scope of the warrant demonstrates that the searchers' purpose was to conduct a general exploratory search. In *Rettig*, in contrast to this case, the items seized plainly indicated the searchers' knowledge of the items and intent to seize them, because the searchers had previously applied for and been denied a warrant to seize those very items. *Rettig*, 589 F.2d at 422–23. By contrast, the seizure of the passport does not prove that its seizure was the purpose of the search, in the absence of other evidence of the officers' knowledge and intent. Because the passport's discovery was inadvertent, its seizure was permitted under the plain view doctrine.

In sum, the search warrant was not a general one, nor was the search as executed a general search. The warrant was supported by probable cause despite inaccuracies in the affidavit. The inadvertent discovery of the passport allows the warrantless seizure under the plain view doctrine. Finding no error in the order denying Fawole's motion to suppress, we affirm the conviction.

AFFIRMED.