4 F.3d 986
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Joseoh Gerald ANTHONY, a/k/a Joseph Gerald Carbone,
Defendant-Appellant.
 No. 92-5258.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1993.
Decided: August 24, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Salisbury. Norwood Carlton Tilley, Jr., District Judge. (CR-91-211-S)
 Argued: George Alan DuBois, Jr., Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.
 John Warren Stone, Jr., Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 On Brief: Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL and HAMILTON, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 On 19 November 1991 Joseph Gerald Anthony was convicted of robbing the Security Bank and Trust Company of Concord, North Carolina. Among the evidence admitted at trial for the prosecution was a dark wig seized during a search of Anthony's residence and the identification by a witness who worked at a car dealership on the day of the robbery. Anthony appeals from the judgment of conviction, alleging the district court erred in admitting both the wig and the identification. We affirm.
 
 
 2
 * Anthony's principal contention against the admission of the wig is that it was seized in violation of the Fourth Amendment of the United States Constitution by virtue of an invalid search warrant. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The United States Supreme Court explains this guarantee is designed to prevent a "general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). The instant search warrant was invalid, Anthony contends, because it was overly broad and not supported by probable cause.
 
 
 3
 * General warrants are prohibited by the Fourth Amendment. Andresen v. Maryland, 427 U.S. 463, 480 (1976). The particularity requirement and corresponding prohibition of general warrants "prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196 (1927).
 
 
 4
 In the instant case, a magistrate issued a warrant for the search of Anthony's residence authorizing the seizure of "[e]vidence of the crime of bank robbery consisting of bank loot, including 'bait' money, clothing used in bank robberies, weapons used in bank robberies, and other items of evidentiary value used in suspected bank robberies." On its face, the warrant seems broad, but the test for the necessary particularity of a search warrant is "a pragmatic one: 'The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved ... [.][T]here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.' " United States v. Torch, 609 F.2d 1088, 1090 (4th Cir. 1979) (quoting United States v. Davis, 542 F.2d 743, 745 (8th Cir.), cert. denied, 429 U.S. 1004 (1976)), cert. denied, 446 U.S. 957 (1980).
 
 
 5
 Notwithstanding the pronouncement in Marron, the law of this circuit does allow some discretion to the officers executing a search warrant, so long as the warrant at least minimally"confines the executing officers' discretion by allowing them to seize only evidence of a particular crime." United States v. Fawole, 785 F.2d 1141, 1144 (4th Cir. 1986). In United States v. Ladd, 704 F.2d 134 (4th Cir. 1983), for example, this court upheld a warrant leaving searching officers the discretion to seize all property relating to "the smuggling, packing, distribution and use of controlled substances," as satisfying fully the particularity requirement. The Ladd court held that "[m]ore specificity is not required by the Constitution." Id. at 136.
 
 
 6
 The warrant in the instant case limited the agents' search to evidence relating to the commission of a particular crime: bank robbery. Though certainly broad in its description, we cannot say that the warrant failed to provide that degree of specificity required by the precedent of this court.*
 
 B
 
 7
 Another issue implicitly raised by Anthony is that the search itself, although executed under the authority of a valid warrant, was unconstitutionally broad. "The Fourth Amendment prohibits general warrants and general searches." Fawole, 785 F.2d at 1144 (emphasis added). In this case, the agents searching Anthony's residence, although allegedly looking only for the instrumentalities and fruits of bank robbery, seized a broad array of property, including the wig at issue, a section of the local newspaper, plastic telephone indexes, VHS video tapes, a red spiral notebook, several telephone and address books, a diary, and a briefcase with various documents. The items seized pursuant to the warrant do suggest it was used to conduct a "general, exploratory rummaging in a person's belongings."
 
 
 8
 Nonetheless, the good faith doctrine counsels against exclusion of evidence obtained by an officer's good faith reliance on a search warrant and that "[s]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." United States v. Leon, 468 U.S. 897, 918 (1984). We are troubled in this case both by the warrant's imprecise description of the things to be seized and by the extensive nature of the resulting seizure. Under the particular facts of this case, however, we conclude that the wig at issue should not be excluded because we believe the agents did seize it in good faith reliance on the warrant: The warrant authorized the seizure of clothing and other items of evidence used in the bank robbery; the agent who filed the warrant application recounted in his affidavit that a witness had described the robber as "possibly wearing a wig"; and the same agent, whom we may reasonably infer was present at the site of the search, made the inventory of property seized and presented the return. Therefore, because investigation evidence suggested the robber wore a wig during the robbery, and because the searching agents were aware of the wig's potential evidentiary value, we cannot say they did not act in good faith when they seized it.
 
 C
 
 9
 We also reject Anthony's claim that the warrant was not supported by probable cause. His principal argument on this point is that the agent who supplied the affidavit established no nexus between the property to be seized and Anthony's residence. At the motion hearing during which the issue was discussed, the district court asked, "Don't you think it is objectively reasonable to believe that a person would keep clothing or money at the place where they lived?" J. App. at 92. Anthony conceded that in certain circumstances that belief would be reasonable. This circuit, moreover, has established"that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988), cert. denied, 488 U.S. 1031 (1989). Under the circumstances of this case, we conclude the warrant was supported by probable cause.
 
 II
 
 10
 Anthony also argues that the district court erred in admitting the identification testimony of Larry Day, a car salesperson in Concord, North Carolina. The morning of the robbery of the Security Bank and Trust Company, 27 November 1990, Day had conversed with a potential customer who wanted to test drive a Chevrolet pickup truck. Day spent about fifteen minutes conversing with the individual before letting him take the vehicle for a test drive. The vehicle later was identified as the vehicle the robber used to escape the scene of the robbery. Day testified that Anthony was the man who took the vehicle for a test drive.
 
 
 11
 Day first provided police officers with a description of the individual to whom he had lent the truck on the day of the robbery-a description that matched Anthony. Day also provided information used to create a composite sketch of the suspect. In June 1991, a police officer again spoke with Day and provided Day with a photographic array of six individuals. Day was allowed five to ten minutes to view the photographs in private to determine if any were of the man to whom Day had lent the truck. Day testified that he "knew right away which one it was," J. App. at 47, and that he "looked at them and was definitely sure that that was the person who got the truck." Id. at 57. The photograph he chose was a photograph of Anthony. In September 1991, police invited Day to appear at a lineup in Concord to determine if he recognized any of six live subjects as the man who took the truck. As the individuals in the lineup entered the viewing room, Day stood up and said, "Okay. I recognize him." Id. at 66-67. Day was instructed to reserve judgment until the lineup was completed. After the lineup, Day told an officer, "I am positive it was number 5. There is no doubt in my mind it is him." Id. at 67. He had again chosen Anthony.
 
 
 12
 Anthony argues that the admission of Day's identification testimony was error that deprived him of his constitutional right to due process of law. He argues the lineup was unduly suggestive because Day had recognized three of the men in the lineup as deputy sheriffs, because a fourth man was taller and more thin than Anthony, and because Day had already seen a photograph of Anthony.
 
 
 13
 To determine the admissibility of identification testimony, we focus our analysis on the reliability of the identification. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 198-99 (1972). The Supreme Court sets forth five factors to guide our analysis of reliability: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the individual, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Biggers at 199.
 
 
 14
 In the instant case, we find the balance of the analysis to weigh in favor of reliability. Day spoke face-to-face with the individual who borrowed the truck for about fifteen minutes on the day of the robbery. He was apprised of the truck's probable use in the robbery later that morning, and therefore had reason immediately to commit to memory the description of the person he had spoken with only an hour before. That same day he gave to police a description of the individual that accurately described Anthony. He later expressed no ambiguity in choosing Anthony at either the photographic array or during the live lineup. His immediate and unsolicited reaction at the lineup established his certainty.
 
 
 15
 The lineup, to be sure, did not occur until ten months after he had spoken with the individual at the car dealership. Were this the first time he had the opportunity to recall what the individual looked like, we certainly would find the circumstances of this lineup unduly suggestive and the resulting identification inadmissible. As stated, however, Day had reason only one hour after a fifteen-minute, face-to-face encounter to commit to memory the image of the person who borrowed the truck. Considering the totality of these circumstances, we find the identification to have sufficient indicia of reliability to render it admissible.
 
 
 16
 Accordingly, based on the foregoing, we affirm the district court's judgment of conviction.
 
 AFFIRMED
 
 
 *
 The affidavit establishing probable cause for the warrant in this case included a more specific list of items to be seized and also referenced the wig in passing. In some instances, a search warrant and affidavit, when read together, may provide adequate particularity of items to be seized. United States v. Washington, 852 F.2d 803, 805 (4th Cir.), cert. denied, 488 U.S. 974 (1988). The affidavit, however, may provide the necessary particularity for a warrant only " 'if it is either incorporated into or attached to the warrant.' " Id. (quoting Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1987)). The issue in this case likely would not have reached us if the agents had taken care to be more specific in the warrant or at least attached the affidavit to the warrant and incorporated it into the warrant by specific reference