**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.                                              No. 01-4776

ROBERT HENRY DAVIS, a/k/a Pops,
              *Defendant-Appellant.*

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.                                              No. 01-4777

CLEVELAND DARNELL COPELAND,
a/k/a Heavy D, a/k/a Darnell,
              *Defendant-Appellant.*

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.                                              No. 01-4858

JOHN DILLARD,
              *Defendant-Appellant.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-00-424-PJM)

Argued: January 24, 2003

Decided: May 7, 2003

Before WILKINS, Chief Judge, WIDENER, Circuit Judge, and Morton I. GREENBERG, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Frederick James Sullivan, Bowie, Maryland, for Appellant Davis; Thomas J. Saunders, Baltimore, Maryland, for Appellant Dillard; Timothy S. Mitchell, Greenbelt, Maryland, for Appellant Copeland. Mythili Raman, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Defendants Robert Henry "Pops" Davis, John Dillard, and Cleveland Darnell "Heavy D" Copeland (defendants) appeal the judgment of the United States District Court for the District of Maryland in which the jury convicted defendants of conspiring to distribute and possessing with intent to distribute more than five kilograms of cocaine and more than fifty grams of cocaine base (crack) in violation of 21 U.S.C. § 846 (Count 1). In addition, the jury convicted Robert Henry Davis (Pops) of possession with intent to distribute more than five kilograms of cocaine and more than fifty grams of crack (Count III), in violation of 21 U.S.C. § 841(a), and convicted John Dillard of

possession of firearms in furtherance of a drug trafficking crime (Count Six) in violation of 18 U.S.C. § 924(c). Defendants raise numerous assignments of error. Finding no reversible error, we affirm the judgment of the district court.

I.

The grand jury returned a second superceding indictment charging numerous persons, including defendants, of various federal crimes relating to their roles in a drug trafficking conspiracy occurring approximately between December 1997 and August 2000. Defendants pleaded not guilty and proceeded to trial. On June 28, 2001, after a thirteen-day trial, the jury returned a verdict of guilty on all counts.

The government's evidence at trial showed as follows. Ronald Dillard operated a large-scale drug trafficking organization in the Maryland area. During the 1990's, Ronald Dillard obtained much of his cocaine supply from defendant Robert "Pops" Davis or one of Pops' associates. The persons helping Pops to transport and distribute drugs from Miami included his sons, Robert Craig and Roshawn Davis, Pops' sister, Mrs. Sarah Carter, and Pops' associate, Dietrich Forbes (collectively Davis group). Witnesses testified that in the mid 1990's, Pops began making monthly trips to the Maryland area in vehicles equipped with hidden compartments containing illegal drugs. Mrs. Carter's Maryland residence served as a drop-off point for persons, including Ronald Dillard, to make drug payments and take possession of drugs sold by the Davis group.

After purchasing large quantities of drugs from the Davis group, Ronald Dillard sold the drugs for further redistribution by his associates, including defendants John Dillard and Cleveland Darnell "Heavy D" Copeland (Copeland), brothers who jointly owned and operated Threadz Sportz store. Intercepted telephone calls and video surveillance revealed that John Dillard and Copeland used the Threadz Sportz store as a front for drug distribution. In addition, recorded conversations intercepted from the Threadz Sportz store confirmed that John Dillard inquired when Ronald Dillard's next supply of cocaine from the Davis group would arrive. Testimony also established that Copeland, in addition to purchasing cocaine from

Pops indirectly, also purchased cocaine directly from Pops' associate, Dietrich Forbes.

On August 18, 2000, DEA agents obtained search warrants to search Mrs. Carter's Maryland residence and Pops' 1995 blue Chevrolet conversion van. Pursuant to the search warrants, DEA agents retrieved more than eight kilograms of cocaine in secret compartments of the blue van and more than $140,000 in cash from Mrs. Carter's residence. On August 23, 2000, the DEA searched Threadz Sport store and discovered a stolen semiautomatic weapon and a box of ammunition.

## II.

Defendants first contend that the district court erred in refusing to define reasonable doubt for the jury. This court has "consistently and vigorously condemned the attempts of trial courts to define reasonable doubt." *United States v. Reives*, 15 F.3d 42, 45 (4th Cir. 1994). We decline defendants' invitation to reconsider the precedent of this circuit.

Additionally, defendants allege that the district court erred by providing the jury a preponderance of the evidence standard applicable to the forfeiture count, when it did not define the reasonable doubt standard. Defendants failed to object to the preponderance instruction given to the jury or request bifurcation of the criminal and forfeiture phases of the trial, and thus we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

Jury instructions are not evaluated in isolated segments, but are considered as a whole. See *United States v. Cropp*, 127 F.3d 354, 360 (4th Cir. 1997). The district court repeatedly informed the jury that the government had to prove defendants' guilt on the criminal counts beyond a reasonable doubt, and specifically instructed the jury that the preponderance of evidence standard applied only to the forfeiture count. Taken as a whole, no reasonable jury could have confused the two standards, and the instruction did not constitute error, plain or otherwise.

### III.

Defendants John Dillard and Copeland contend that the district court erred by refusing to give a tendered multiple conspiracies instruction. To be entitled to a multiple conspiracies instruction, the evidence at trial must show that the defendants were "involved only in separate conspiracies *unrelated* to the overall conspiracy charged in the indictment." *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (citations and quotes omitted) (italics in *Kennedy*).

We have examined that record and find that the government presented ample evidence linking Dillard and Copeland to the charged conspiracy. Furthermore, Dillard and Copeland failed to point to any evidence demonstrating that they were involved only in a separate conspiracy unrelated to the Davis-Dillard conspiracy. Accordingly, the district court did not err in refusing to give a multiple conspiracies instruction.

### IV.

Pops maintains that the district court erred by failing to instruct the jury that constructive possession requires proof that the defendant had both the power and intent to exercise control over an object. The defendant argues that the instructions given by the district court required the jury to find merely that Pops had the *ability*, but not the intent, to possess cocaine to establish constructive possession.

We need not decide whether the constructive possession charge given by the district court created ambiguity as to the intent requirement because any alleged defect in the instruction could not have resulted in unfair prejudice to Pops. The evidence of Pops' actual possession of the drugs in this case is incontrovertible. Numerous witnesses testified that Pops personally transported drugs from Miami to Maryland in custom equipped vehicles, and when police arrested Pops and searched his van on August 30, 2000, they discovered drugs hidden inside a secret compartment. Any deficiency in the constructive possession instruction could not have caused defendant substantial prejudice. *United States v. Tipton*, 90 F.3d 861, 883 (4th Cir. 1996).

V.

Pops contends that the district court erred in admitting, pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence, hearsay testimony detailing Pops' drug trafficking activities prior to the charged conspiracy.

During the trial, the government introduced testimony by Gary Lyles that while working for campus security at Howard University in the late 1980's, Lyles sold drugs supplied to him by Robert Craig Davis, son of Pops Davis. Lyles testified that during this time, he learned who was supplying Robert Craig Davis with drugs. Over defendant's objection, Lyles testified that Robert Craig Davis told him that his father, defendant Pops Davis, was his cocaine supplier.

The government maintains that Lyles' testimony about statements made by Robert Craig Davis in the 1980's falls within the coconspirator hearsay exception because the statements were made by an uncharged "coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In federal conspiracy trials, the hearsay exception allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators only if the statements were those that "must be made in furtherance of the conspiracy charged." *Krulewitch v. United States* 336 U.S. 440, 442 (1949). While the government may have shown that Robert Craig Davis was an uncharged conspirator in the Davis-Dillard conspiracy, we do not agree that it established that the challenged statements were made in furtherance of the conspiracy charged in the indictment.

The conspiracy for which Pops Davis was tried began "in or about December 1997." The statements challenged by defendant were made in the late 1980's, some eight or so years prior to the conspiracy dates charged in the indictment. While Lyles' testimony indicated that Pops and Robert Craig Davis were involved in drug trafficking in the 1980's, Lyles was imprisoned in 1989 for 16 months and did not reenter the drug trade until approximately 1992. Therefore, Lyles' testimony did not establish that Pops and Robert Craig's earlier drug trafficking activities were part of an ongoing and uninterrupted drug conspiracy which continued until 2000. Moreover, the government

failed to present other evidence linking the Davises' activities in the 1980's to the drug conspiracy charged in the indictment. Because the government did not establish an ongoing conspiracy spanning from the 1980's to 2000, we cannot conclude that statements made in the 1980's that Pops was Robert Craig Davis' drug supplier were made in furtherance of the charged conspiracy, and accordingly, the district court should have excluded the statements as inadmissible hearsay under *Krulewitch*.

Having concluded that the district court improperly admitted the challenged statements over defendant's objection, we next must determine whether this error entitles defendant to a new trial. The constitution mandates that a defendant is entitled to "a fair trial but not a perfect one," *Lutwak v. United States*, 344 U.S. 604, 619 (1953), and the error must be disregarded under harmless error review if it "does not affect substantial rights." Fed. R. Crim. Proc. 52(a); *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997). "[I]n order to find a district court's error harmless, we need only be able to say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Brooks*, 111 F.3d at 371 (citations omitted).

The government presented ample evidence of Pops' participation and leadership role in the charged conspiracy including seizure of cocaine from the hidden compartment of Pops' van, wiretap conversations indicating that Pops regularly transported cocaine from Florida to Maryland, and testimony by Pops' sister, Mrs. Carter, and Pops' son, Roshawn Davis, confirming Pops' involvement in the drug conspiracy. Upon review of the entire record, we conclude that it is unlikely that the jury's verdict was affected by the hearsay testimony, and therefore, the error was harmless. We are also of opinion that the refusal to set aside the verdict in this case is not inconsistent with substantial justice. Cf. Fed. R. Civ. Proc. 61 & advisory committee's note; Fed. R. Crim. Proc. 52 & advisory committee's notes.

## VI.

Pops argues that the district court erred in denying his motion to suppress evidence because the search warrants were not supported by

probable cause, the warrants contained only generalized descriptions of the items law enforcement sought, and the searches were conducted after the warrant was executed but while the warrant itself was not on the premises. Our review of the record reveals sufficient evidence existed to support a finding of probable cause for the issuance of the search warrants. Specifically, the affidavit in support of the warrants' referral to (1) information from proven reliable confidential informants that Ronald Dillard's drug supplier was Pops and that Pops used a blue van with hidden compartments to transport drugs from Miami to Maryland; (2) intercepted telephone calls indicating that Pops was supplying drugs to the Dillard group; and (3) physical surveillance of the Suitland Road address at which the blue conversion van was observed. The record contains substantial evidence to support the magistrate's decision to issue the warrants, and the district court did not err in denying the motion to suppress.

Defendant also argues that the warrant obtained to search the Suitland Road apartment was facially deficient because it contained only a generalized description of property to be seized. The Fourth Amendment provides that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The test for the necessary particularity of a search warrant is "a pragmatic one: The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (internal quotation marks omitted). We give discretion to the officers executing a search warrant, so long as the warrant "confines the executing officers' discretion by allowing them to seize only evidence of a particular crime." *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986). The affidavit in support of the search warrant sought the seizure of controlled substances, cash, communication devices, items related to the distribution of controlled substances, identification documents, financial records, travel records, and weapons. We are persuaded that the descriptions contained in the attachment to the affidavit were sufficiently particularized to limit the scope of the search to evidence of illegal drug trafficking.

Pops further argues that the district court erred in not suppressing evidence because the search of the Suitland premises and van began

after the officers were informed that the search warrants had been signed, but before the search warrants reached the premises searched. We disagree with, and find no authority to support, Pops' argument that a search is warrantless simply because it is not on the premise when the search is made. We hold that the search was not warrantless on that account.

## VII.

Defendant Copeland maintains that the district court erred in denying his motion to sever his trial based on his need for co-defendant Pops Davis to testify on his behalf. The grant or denial of a motion to sever is reviewed for abuse of discretion. *United States v. West*, 877 F.2d 281, 287-88 (4th Cir. 1989). The basic rule is that persons who have been indicted together, particularly for conspiracy, should be tried together. *United States v. Brooks*, 957 F.2d 1138, 1145 (4th Cir. 1992).

When a defendant bases his severance motion on a purported need for a co-defendant's testimony, "the moving defendant must establish (1) a bona fide need for the testimony of his co-defendant, (2) the likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege, (3) the substance of his co-defendant's testimony, and (4) the exculpatory nature and effect of such testimony." *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983). However, when a co-defendant's offer to testify is conditioned on being tried first, the moving defendant has not established the likelihood that his co-defendant will testify. *Parodi*, 703 F.2d at 779.

In this case, Copeland informed the court that he intended to call his co-defendant, Pops Davis, to refute testimony by Mrs. Carter that she sent Pops a bag containing money from Copeland to purchase drugs. After Mrs. Carter's testimony, the court engaged in an extensive discussion with counsel on whether severance of Copeland's trial was warranted. At this point, Pops stated that he was willing to waive his Fifth Amendment privilege and testify on Copeland's behalf. However, the court deferred ruling on the severance motion until it heard the remainder of the government's case-in-chief at which time the court would have more information about the potential exculpatory value of Pops' testimony.

At the close of the government's case, Copeland renewed his motion for severance. The court again inquired as to whether Pops was willing to testify in the present trial if called by Copeland. Counsel for Davis stated that Pops was unwilling to testify in either his own trial or Copeland's trial and would invoke his Fifth Amendment privilege. Based on counsel's representation that Pops was no longer willing to testify without qualification on Copeland's behalf and the court's determination that substantial other evidence inculpated Copeland, the court denied Copeland's motion to sever.

Regardless of whether Pops initially agreed to testify on Copeland's behalf, Pops ultimately was unwilling to waive his Fifth Amendment privilege and testify on Copeland's behalf prior to his own trial. Under the authority of *Parodi*, Copeland could not establish that Pops was likely to testify on his behalf, and the district court correctly determined that severance was not warranted.

## VIII.

Finally, defendant Copeland challenges the sufficiency of the evidence supporting his conspiracy conviction. In reviewing a sufficiency of the evidence claim, this court will sustain a guilty verdict if there is substantial evidence, viewed in the light most favorable to the government, to support the verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942).

Copeland maintains that the government's case rested almost entirely on Mrs. Carter's testimony. Copeland's argument hinges on his contention that Mrs. Carter, as a coconspirator testifying for the government, was not a credible witness. "[D]eterminations of credibility are within the sole province of the jury and are not susceptible to judicial review." *United States v. Burgos*, 94 F.3d 849 at 863 (4th Cir. 1996) (internal quotation omitted). Moreover, the government presented evidence, independent of Mrs. Carter, that Copeland was involved in the Davis-Dillard drug conspiracy. The evidence included (1) testimony by Roshawn Davis that Copeland purchased cocaine from Dietrich Forbes and that Forbes complained that Copeland's payment was $8,000 short; (2) testimony by Harry White that after John Dillard was unavailable to make a drug sell, Dillard told White to contact his brother, Copeland, and that when Copeland brought

White the drugs, he told White that when Dillard was unavailable, White could contact him; and (3) surveillance evidence linking Copeland, independently and through his brother, John Dillard, to the Davis-Dillard conspiracy by exposing John Dillard and Copeland's participation in numerous drug transactions from the Threadz Sportz store. Reviewing the evidence in the light most favorable to the government, we conclude that the government presented sufficient evidence to support Copeland's conviction.

Accordingly, the judgment of the district court is

*AFFIRMED*.