642 P.2d 485

The STATE of Arizona, Appellant/Cross Appellee,

v.

James Alan HARRIS, Appellee/Cross Appellant.

No. 2 CA–CR 2449.

Court of Appeals of Arizona, Division 2.

Feb. 26, 1982.

Stephen D. Neely, Pima County Atty. by Paul S. Banales, Tucson, for appellant/cross appellee.

Charles L. Weninger, Tucson, for appellee/cross appellant.

OPINION

HOWARD, Chief Judge.

This is an appeal from the partial granting of a motion to suppress and a cross-appeal from the partial denial of a motion to suppress. We vacate the order granting the partial suppression and affirm the partial denial.

The witness who testified at the motion to suppress was Herbert Bay, a detective with the Tucson Police Department. His testimony reveals that in May 1980, a construction site in Tucson was burglarized and four construction companies and Pima County lost a substantial amount of valuable property.

On October 6, 1980, James Edwards telephoned the Tucson Police Department and indicated that he had information about the burglary. Detectives Bay and Ormsby met with Edwards who told them that he knew there had been a burglary at the construction site of the waste water management facility. Furthermore, he told them that nine days earlier he had seen a large quantity of property taken in the burglary in the possession of appellee and that appellee had bragged to him about having stolen the property.

Edwards described this property in great detail. He stated that he had seen a Motorola walkie-talkie radio inscribed with the words "Newberry Mechanical Division, No. 7" at appellee's residence. Detective Bay asked Edwards to try to bring the radio to him so that the serial number could be checked to determine if the radio had been stolen.

After speaking with Edwards, Detective Bay confirmed the fact that the Newberry Construction Company had lost property in the May burglary. He then contacted the mechanical division of Newberry and spoke to Don Laurant who confirmed the fact that the company had lost a Motorola radio inscribed with the words "Newberry Mechanical Division, No. 7" in the burglary.

The following morning, Edwards brought the Motorola radio to the police station. He said appellee had given the radio to one Morris Brown who in turn gave it to him. The same day, Detective Ormsby took the Motorola radio to Newberry where it was examined by Laurant who confirmed that the radio belonged to Newberry and had been stolen in the May burglary.

Detective Bay then contacted each company that had been victimized in the burglary and obtained from each a written list of items taken. These lists were compared to the list of property that Edwards reported seeing at appellee's residence. Every item that Edwards saw at appellee's residence also appeared on the lists provided by the companies.

That same day the detectives, accompanied by Edwards, drove to appellee's address to get an idea of the layout of the premises. Appellee's residence is located on a large lot where there are several other buildings, including other residences, a carport and a garage. A large tree growing on the property and a car sitting up on blocks prevented the detectives from seeing at this time a small shed located about 50 feet east of appellee's residence.

After viewing the premises, the detectives drew up an affidavit based on the information provided by Edwards and obtained a warrant to search appellee's residence as well as the garage located there. The search warrant was served and during the search Detective Bay located the shed. He asked appellee about it and appellee told him that it was just a crumbling facility and that the landlord and other people in the area used it to store things that were not wanted. He told Detective Bay that he did not have anything in the shed. Detective Bay walked over to the shed and noticed that the door was unlocked and partially open. A rock placed in front of the door prevented it from opening further but in looking into the shed through the partially-opened door, Bay saw some construction tripods matching the description of tripods stolen in the May burglary.

Believing that the shed contained stolen property, Bay telephoned the justice of the peace who issued the original search warrant and told him about the shed. The justice of the peace amended the search warrant to include the shed. The shed was searched and stolen property recovered. Stolen property was also recovered from appellee's residence. The parties stipulated that the state could file its written opposition to the motion to suppress after the hearing. The state did so and in its opposition attacked the standing of appellee to

raise a Fourth Amendment violation. The trial court, in granting the motion to suppress, concluded that appellee had standing by virtue of the fact that the original search warrant was directed against appellee and the search of the shed was conducted by virtue of an amendment to the original search warrant and not under a new search warrant. We are unable to agree with the trial court's conclusion.

A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Furthermore, the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *Rakas v. Illinois*, fn. 1, 99 S.Ct. at 424. The unrefuted evidence in this case was that appellee had no possessory interest in the shed. The fact that the search was directed towards him is not the test. Cf. *United States v. Hansen*, 652 F.2d 1374 (10th Cir. 1981). Appellee did not carry his burden of proof by showing his possessory interest in the shed, and therefore the trial court erred in suppressing the evidence seized from the shed.

Appellee contends the trial court erred in failing to suppress the evidence seized in his residence pursuant to the search warrant because the affidavit failed to set forth anything to show the reliability of the informant. We do not agree. The affidavit states that the officers corroborated the information given them by Edwards. Bay independently corroborated the fact that there was a burglary at the waste water plant and that all the items described by Edwards had been reported stolen from the site. The theft of the Motorola walkie-talkie radio which had "Newberry Mechanical Division No. 7" engraved on the side was verified by Detective Bay calling the Newberry Construction Company as being similar to a radio lost in the burglary. When the radio was secured by the detectives, personal examination by Laurant verified the radio as having been stolen. Such corroboration shows the reliability of Edwards. See *State v. Smith*, 122 Ariz. 58, 593 P.2d 281 (1979). Furthermore, a nonprofessional citizen informant is presumed to be reliable. *State v. Diffenderfer*, 120 Ariz. 404, 586 P.2d 653 (App.1978).

In *United States v. Burke*, 517 F.2d 377 (2nd Cir. 1975) police officers received information from one Lonnie Thompson that he had seen a shotgun at the defendant's home and that the defendant told him the shotgun was stolen. The officers swore out an affidavit stating (1) that Lonnie Thompson had reported seeing the shotgun at defendant's home and (2) that Thompson stated that the defendant had admitted the shotgun was stolen. The defendant claimed that the affidavit was insufficient because it failed to satisfy the test under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The court, in rejecting defendant's claim, stated:

"... [T]here has been a growing recognition that the language in *Aguilar* and *Spinelli* was addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to a crime....

\*     \*     \*     \*     \*     \*

... [T]he affidavit was sufficient; it made evident that Thompson had been in the bedroom of Burke's apartment and had talked with Burke about the gun, or at least that he had said so. [citation omitted] To be sure, it would have been better if the affidavit had recited how Thompson had come to see and hear what he did and still better if there had been an affidavit by Thompson himself, ... but it is clear to us that the magistrate had 'a " 'substantial basis' for crediting the hearsay." [citations omitted]' It is true also that Thompson could have been lying to the affiants, that the affiants could have been lying to the judge, or both. But such risks are inherent in any system allowing, as it must, that search

warrants may be issued on something less than a full trial of the existence of probable cause.... [T]he affidavit gave the 'neutral and detached magistrate' something he could permissibly determine to constitute probable cause." 517 F.2d at 380–81.

The order suppressing the evidence seized pursuant to the amended search warrant is vacated and set aside. The order denying the motion to suppress the evidence seized pursuant to the original search warrant is affirmed.

HATHAWAY and BIRDSALL, JJ., concur.