NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ROBERT CARRILLO, *Appellant*.

No. 1 CA-CR 18-0764
FILED 1-16-2020

Appeal from the Superior Court in Maricopa County
No. CR2014-142035-001
The Honorable George H. Foster, Jr., Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Gallagher & Kennedy, P.A., Phoenix
By Woody Thompson, Hannah H. Porter
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

_____

**W I N T H R O P**, Judge:

**¶1**        Robert Carrillo appeals from his convictions and sentences for seven counts of sexual exploitation of a minor.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**        Carrillo's adult step-daughter, P.Z., discovered images of partially clothed and naked children on Carrillo's Sony laptop.  P.Z. told her mother, P.C., about the images and showed some of them to her before P.C. eventually informed her doctor "she had seen images of young children wearing little or no clothing . . . [on] a computer that was under the control of Robert Carrillo."  The doctor reported P.C.'s comment to the Phoenix Police Department, and Detective Angel then interviewed P.C. and P.Z.

**¶3**        While police officers surveilled Carrillo's home, Detective Angel secured a warrant to search the residence for digital evidence of sexual exploitation of minors.  Detective Angel's affidavit for the search warrant included information he obtained through the interviews with P.C. and P.Z.  During the subsequent search, the officers seized, among other items, a Sony Vaio laptop[2] and a PNY thumb drive that contained such evidence.    A forensic examination of the laptop later revealed approximately 1,000 images of children being sexually abused or exploited.  Carrillo was alone in the home during the search and for almost two hours before officers served the warrant.

_____

[1]        We view the facts in the light most favorable to upholding the jury's verdicts.  *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 (2005).

[2]        As Carrillo notes, P.C. mistakenly referred to the Sony laptop as an "HP" laptop during her interview with Detective Angel.

¶4 The State charged Carrillo with ten counts of sexual exploitation of a minor, Class 2 felonies and dangerous crimes against children. Counts 1 through 7 were based on images found in the Sony laptop's temporary internet folder that were created when Carrillo was alone in the home prior to the search. Counts 8 through 10 referred to images found on the PNY thumb drive that were created or downloaded between July 28, 2012, and August 29, 2014.

¶5 Before trial, Carrillo moved to suppress the evidence police obtained when they searched Carrillo's home, arguing Detective Angel's affidavit for the warrant "purposefully misled and kept relevant facts from the judge granting the warrant." Specifically, Carrillo pointed to the following facts omitted from the affidavit: (1) P.C. thought P.Z. was "a liar"; (2) when P.C. looked for the images on the Sony again after P.Z. initially showed them to her, P.C. could not find them; (3) P.C. described the images as not exploitive and merely said they were "inappropriate" because they depicted females, and she and Carrillo were married; (4) P.C. believed P.Z. could have placed the images on the computer as retribution for Carrillo's failure to give P.Z. money; and (5) P.Z. did not specifically refer to the children in the images as "LS Models," a term Detective Angel referenced in the affidavit. Carrillo also claimed Detective Angel included the following misstatements in the affidavit: (1) P.Z. was a "documented victim of child sex abuse"; (2) Carrillo was the only user of the Sony laptop; and (3) P.C. described the children in the images as unclothed.

¶6 The superior court held an evidentiary hearing on the motion to suppress at the conclusion of which the court denied the motion. In doing so, the court found "there were no 'false statements or material omissions' contained in the search warrant affidavit that would have deterred a neutral magistrate from finding probable cause to believe that the computer in question contained the images described."

¶7 Also, before trial and over Carrillo's objection, the State moved to admit under Arizona Rule of Evidence ("Rule") 404(b) evidence of uncharged acts of sexual exploitation of minors. The other-act evidence consisted of 44,506 relevant electronic files, including additional digital images found on thumb drives, and indicia that websites commonly associated with child pornography were accessed on Carrillo's laptops—the Sony laptop and a Compaq. The superior court granted the motion after conducting a two-day evidentiary hearing.

¶8 Trial commenced, and the superior court granted in part Carrillo's motion for judgment of acquittal, finding the evidence was

insufficient to allow the jury to consider Counts 8 through 10. *See* Ariz. R. Crim. P. 20. The jury found Carrillo guilty of the remaining counts, and the court imposed consecutive ten-year terms of imprisonment. This timely appeal followed. We have jurisdiction under the Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## ANALYSIS

**¶9** Carrillo raises two general issues. First, he challenges the superior court's denial of the motion to suppress that challenged the search warrant. Second, Carrillo argues the court did not comport with Rule 404 when it granted the State's motion to admit other-act evidence.

**¶10** We review the court's ultimate rulings for an abuse of discretion, but we review *de novo* the court's legal decisions such as whether probable cause supports a search warrant affidavit or whether to admit other-acts evidence. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996); *State v. Buccini*, 167 Ariz. 550, 555 (1991); *State v. Carter*, 145 Ariz. 101, 110 (1985); *State v. Connor*, 215 Ariz. 553, 563, ¶ 32 (App. 2007).

      I.     *The Search Warrant*

**¶11** Carrillo argues Detective Angel recklessly omitted material facts in his search warrant affidavit and thereby misled the magistrate into finding probable cause existed to support issuance of the warrant.

**¶12** A search warrant may be voided if the defendant shows by a preponderance of evidence that (1) the affidavit contained a false statement made knowingly, intentionally, or recklessly by the affiant; and (2) the false statement was necessary to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If a defendant establishes the first prong of the test, the superior court must set aside the false information. *Buccini*, 167 Ariz. at 554. The court must then view the affidavit's remaining content to determine whether it establishes probable cause. *Id.* If not, the search warrant is void and anything obtained from the search must be excluded. *Id.*

**¶13** Search warrants are presumed valid and the defendant has the burden to prove otherwise. *State v. Crowley*, 202 Ariz. 80, 83, ¶ 7 (App. 2002). In determining whether to issue a search warrant, a magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The superior court's duty is "to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (alteration in original) (citation omitted).

**¶14**     The relevant statute states in pertinent part, "[a] person commits sexual exploitation of a minor by knowingly . . . *receiving* . . . [or] *possessing* . . . any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13-3553(A)(2) (emphasis added). "'Exploitive exhibition' means the actual or simulated exhibition of the genitals or pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer." A.R.S. § 13-3551(5).

**¶15**     The evidence at the suppression hearing revealed that during her interview with Detective Angel, P.Z. said she located images of children, ages "of like two, three years old" to "probably about 10, 11," in "various . . . awkward, very sexual poses . . . in women's lingerie" in the recycle bin of Carrillo's laptop. Detective Angel also recounted that P.Z. said "some of the focus was on the genitalia of the children." *See State v. Blackmore*, 186 Ariz. 630, 631 (1996) (stating that when reviewing the denial of a motion to suppress, we review only the evidence submitted at the suppression hearing). This description of the images, which Detective Angel substantively included in the affidavit, is by itself sufficient to support a determination that evidence of sexual exploitation of a minor probably existed on Carrillo's computer. *See State v. Harris*, 131 Ariz. 488, 490 (App. 1982) ("[A] non-professional citizen informant is presumed to be reliable.").

**¶16**     Attacking the sufficiency of P.Z.'s description, Carrillo argues Detective Angel improperly omitted various material facts from the affidavit. First, Carrillo argues Detective Angel should have included P.C.'s description of the images she observed, which was relatively benign as compared to P.Z.'s description of the images. The record from the suppression hearing, however, confirms that P.C. did not see as many of the images as P.Z. Indeed, Detective Angel testified at the hearing that, based on his experience, having seen "millions" of sexually exploitive images of children during his five-year tenure with the Internet Crimes Against Children Task Force, the description P.Z. provided was consistent with an image series known as "LS Models," which involves a progression from images of clothed minors to, ultimately, pornographic images depicting those children in "exploitive exhibition" poses or even engaged in sexual conduct. Detective Angel also testified that when P.Z. showed the images to P.C., she "flipp[ed] through them pretty quick, and that [P.C.]

only saw a certain number of images." Finally, Detective Angel explained he interviewed P.Z. after interviewing P.C. because he did not have probable cause based on P.C.'s statements alone. This too confirms P.C. did not observe all the images—namely the exploitive ones—viewed and later described by P.Z. and that in turn supported the probable cause finding.[3] Accordingly, omitting P.C.'s description of the images that were inconsistent with P.Z.'s description was not a material omission.

¶17        Carrillo also asserts that Detective Angel omitted from the affidavit P.C.'s statement that P.Z. was a "good actress" who had lied before. Carrillo additionally argues Detective Angel improperly omitted P.C.'s stated belief that P.Z. may have downloaded the images "to get back" at Carrillo for his failure to give her money. But P.C.'s *opinion* as to P.Z.'s veracity related to a previous unspecified and unknown event, an opinion Detective Angel learned about before he spoke to P.Z., did not amount to a material factual dispute as to what P.Z. observed on Carrillo's computer. Similarly, as the superior court correctly noted, any possible motive P.Z. may have had to "put the images" on Carrillo's computer were not material to the charged crime, which, as relevant here, also prohibits possessing unlawful images. And, in any event, Detective Angel testified he had no factual basis to suspect that P.Z. had "put the images on the laptop." He left the interview with P.C. to immediately locate and interview P.Z., armed with information that P.C. questioned P.Z.'s veracity and that P.Z. had previously used the computer in question. Detective Angel testified that the interview with P.C. did not yield probable cause for a search warrant, but that he had probable cause after he interviewed P.Z. and presumably explored why P.Z. would have alerted her mother to the images on the laptop.

¶18        Carrillo next argues Detective Angel withheld from the affidavit P.C.'s statement that she could not find the images on the computer at some point after P.Z. first showed her the pictures. This is not a material omission. P.C.'s inability to later "find" the images does not

---

[3]        We therefore reject Carrillo's argument that probable cause did not exist because the images were merely lawful child erotica. Even assuming P.C. only saw images depicting child erotica, P.Z. described sexually exploitive images of children. *Supra*, ¶ 15. Further, Carrillo incorrectly implies an image must depict "full nudity or physical contact" under A.R.S. § 13-3553(A)(2) to qualify as sexual exploitation.

necessarily mean the images were not located on the computer either when she first viewed them or when she was later unable to find them.[4]

¶19        In addition to the purported material omissions from the warrant's affidavit, Carrillo argues Detective Angel recklessly provided false material information.  Carrillo first points to the affidavit's references to the Sony laptop being "solely" used by Carrillo.  Although this reference incorrectly indicated Carrillo as the only user of the laptop, his guilt was not a necessary focus of the investigation at the time the warrant was obtained.  Rather, police intended to gather evidence that the crime of sexual exploitation of a minor had been committed by someone. *See United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) (holding probable cause for a search warrant existed when "affidavit clearly set forth the existence of criminal activity" and "a reasonable inference from the affidavit's facts suggested that incriminating evidence or contraband related to the crimes under investigation would likely be located there").  Thus, as the superior court concluded, if Carrillo's "sole" use of the laptop was excised from the affidavit and replaced with P.C.'s or P.Z.'s statements that: (1) Carrillo was the primary user of the computer; (2) P.C. had not used the laptop in years; and (3) P.Z. used the computer twice—the one time when she discovered the images and the second time when she showed them to P.C., "the amendment would not deter a neutral magistrate from finding probable cause."  Accordingly, Carrillo's sole use of the laptop was not a material misrepresentation.

¶20        Carrillo challenges Detective Angel's use of the term "pornography" in the affidavit and at the hearing when recounting P.Z.'s description of the images she discovered on Carrillo's laptop.  We reject this argument.   Detective Angel's use of the term did not materially misrepresent P.Z.'s verbatim description of the images, *supra* ¶ 15, and if it did, replacing "pornography" with P.Z.'s description would not require a finding that probable cause did not exist.

¶21        Finally, Carrillo argues the "cumulative effect" of the omissions and misrepresentations requires concluding probable cause did

_____

[4]     For this latter reason, we reject Carrillo's argument that the warrant lacked probable cause because P.C. and P.Z. only observed the digital images five months before Detective Angel obtained the search warrant.  Carrillo's "staleness" argument also lacks merit as a matter of law. *See United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) ("[T]he same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography.").

not support the search warrant. The cumulative error doctrine, however, only applies to claims of prosecutorial misconduct, and Carrillo provides no authority to the contrary. *See State v. Hughes*, 193 Ariz. 72, 78-79, ¶ 25 (1998). The superior court did not err by failing to address the cumulative effects of the alleged omissions and misrepresentations reflected in the affidavit.

**¶22** Given the record, we conclude sufficient evidence existed to support a finding of probable cause, and the superior court therefore did not abuse its discretion by refusing to suppress the evidence obtained from the search.

### II. *Other-Act Evidence*

**¶23** Rule 404(b) prohibits evidence of other acts "to prove the character of a person in order to show action in conformity therewith" but allows such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Other-act evidence is admissible if: (1) the evidence is admitted for a proper purpose; (2) the evidence is relevant; (3) the evidence is not unfairly prejudicial under Rule 403; and (4) the judge gives an appropriate limiting instruction if one is requested. *State v. Terrazas*, 189 Ariz. 580, 583 (1997). To be admissible, the State must prove by clear and convincing evidence that the other act occurred, and that the defendant committed the act. *Id.* at 584.

**¶24** Carrillo posited that he was not the one to put the images on the computer and that he did not know the images were on the computer. At the evidentiary hearing, Carrillo's attorney stated that "[o]ur position is other people could have easily committed these other acts, and other people had motive to commit these other acts." His defense suggested that a computer virus or another person accessed and downloaded the illicit images. To counter Carrillo's argument, the State sought to introduce other-acts evidence consisting of search history on two laptops between August 2002 through June 2004, and January 2012 through August 2014, and 44,506 files depicting child pornography or child erotica. The court permitted the other-acts evidence, which contradicted Carrillo's argument that a virus caused the charged illicit images to download on to the laptop when he was using it.

**¶25** Carrillo argues the State failed to prove by clear and convincing evidence that Carrillo possessed the uncharged sexually exploitive material because the superior court should not have afforded

P.C.'s and P.Z.'s "unreliable hearsay" statements evidentiary weight when granting the State's Rule 404(b) motion. Carrillo challenges the witnesses' statements regarding Carrillo as the primary user of the devices on which the criminal images were located. However, as Carrillo concedes, a court may consider hearsay statements to determine the admissibility of evidence. The weight to be afforded such evidence does not impact admissibility, *State v. Van Adams*, 194 Ariz. 408, 416 (1999), and is a matter that rests solely with the superior court as the fact finder, not this court. *See State v. Anderson*, 20 Ariz. App. 309, 313 (1973). Thus, we will not reverse on this basis.

¶26 Disregarding the purported lack of evidentiary value of P.C.'s and P.Z.'s statements regarding Carrillo's use of the devices, Carrillo argues the State nonetheless failed to clearly and convincingly prove Carrillo possessed the uncharged sexually exploitive materials. At the evidentiary hearing, a Phoenix Police Department digital forensics and computer examiner testified to "indicia of use" found on the two laptops containing other-acts evidence. The examiner testified that computer files and online account access indicating Carrillo used the laptops corresponded with the timeframes in which websites associated with child pornography were accessed and illicit images were saved to thumb drives. The court relied on this testimony in finding Carrillo was the "primary user of the computers" when internet searches for the images occurred and the images were downloaded. This evidence supports the court's determination that the State clearly and convincingly proved Carrillo possessed the uncharged materials; we find no error.

¶27 Carrillo also contends the superior court's reliance on P.C.'s and P.Z.'s statements at the 404(b) hearing violated his confrontation rights. Carrillo failed to raise this issue in superior court, and, noting the State did not offer P.C.'s and P.Z.'s statements at trial because they asserted their rights under the Fifth Amendment, Carrillo provides no authority to support his contention that the statements' admission at the evidentiary hearing violated his confrontation rights. We therefore decline to find reversible error.

¶28 Carrillo also claims evidence of the other acts presented at trial was unduly prejudicial under Rule 403. Evidence creates unfair prejudice if it "has an undue tendency to suggest decision on an improper basis," but "[n]ot all harmful evidence . . . is unfairly prejudicial." *State v. Mott*, 187 Ariz. 536, 545-46 (1997). Here, Carrillo's defense that a virus or another person caused the illicit images to be accessed and downloaded tipped the balance of the probative value to outweigh potential prejudice to

him at trial.  *See State v. Valles*, 162 Ariz. 1, 6 (1989).  Further, the jury did not see images from the other-acts evidence, and the court issued a limiting instruction to the jury regarding the use of the other-acts evidence.

**¶29**     There was no error, let alone prejudicial error.  The uncontroverted trial evidence establishes Carrillo was alone when he turned on the Sony laptop, to which the seven sexually exploitive files were soon thereafter downloaded before police executed the warrant.  The trial evidence also established that, although Carrillo's expert discovered viruses on the Sony, he did not discover any virus that automatically download sexually exploitive images.  The seven images resulting in the guilty verdicts were also discovered in the computer's temporary internet folder, thus indicating Carrillo directly navigated to websites containing "key phrases and combinations of words often associated with child pornography and sexual exploitation of minors" that displayed the unlawful images; therefore, Carrillo knowingly *received* the images.  *See State v. Jensen*, 217 Ariz. 345, 351, ¶ 14 (App. 2008).

## CONCLUSION

**¶30**     For the foregoing reasons, Carrillo's convictions and sentences are affirmed.

